UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KATHLEEN HEAROD

      Plaintiff,

Case No. 1:17-cv-175

J. Black
M.J Bowman

vs.

FIFTH THIRD BANK,

      Defendant.

**REPORT AND RECOMMENDATION**

This civil action is now before the Court on Defendant Fifth Third's motion for summary judgment and supporting documents (Doc. 61) and the parties' responsive memoranda and supporting documents. (Docs. 70, 71, 74).

**I.  Undisputed Facts[1]**

The Plaintiff is a former employee of Fifth Third Bank ("Fifth Third"). She worked for Fifth Third as a Dispute Servicing Specialist I in their Dispute Resolution Department ("DRD") in Cincinnati, Ohio. (Doc. 61, Ex. C, Karen Darpel Declaration at ¶4-6). In this role she interacted with Fifth Third's customers over the phone to resolve disputed transactions on their retail banking accounts to prevent losses to the customers and the bank. (Doc. 61, Ex. C, Darpel Decl. at ¶ 7-8); Darpel Decl. Ex. 1, Job Description). Plaintiff was responsible for initiating, analyzing, and rendering decisions on customer disputes and providing Fifth Third's customers with a positive customer experience. Id.

---

[1]  Fifth Third's proposed undisputed facts are well-supported and herein adopted.  (Doc. 61, Ex. A).  As more fully explained below, Plaintiff's response to Fifth Third's undisputed facts is not supported by any citations to contradicting evidence.

On July 23, 2014, Fifth Third offered to hire Plaintiff to work directly for the company beginning August 3, 2014. (Doc. 61, Ex. C Darpel Decl. at ¶ 10; Darpel Decl. Ex. 2). Plaintiff worked for Fifth Third in this position from August 3, 2014 through December 31, 2015 the day she resigned. (Doc. 61, Ex. C, Darpel Decl. at ¶ 11; Darpel Decl. Ex. 3).

Plaintiff reported to Michelle Smith (formerly Michelle Weimer), a white female, from August 2014 to approx. June 2015. (Doc. 61, Ex. D Michelle Smith Declaration at ¶ 5, Ex. C Darpel Decl. at ¶ 12-17. She then reported to Kynae Austin, a black female, from June 2015 to January 2016 when Kynae Austin left the company. Id.  Marilyn Kazmierski, a white female, was the Vice President of the DRD and supervised Michelle Smith ("Smith") and Kynae Austin ("Austin").

All Dispute Resolution Specialists (a/k/a "Agents") in the DRD work a set shift. (Doc. 61, Ex. D, Smith Decl. at ¶ 9-23) The DRD has a set process for awarding shift assignments that has been in effect since June 2014. (Id. ¶17). In order to be eligible, the agents must have worked in their current schedule for at least three months, and they cannot be on a Performance Counseling. Id. (See also, Ex. B, Hearod Depo., at 278-279:1-5). In June 2015, the three-month requirement was changed to six months. (Doc. 61, Ex. D, Smith Decl. ¶18).

The new shifts are then awarded based on a stack ranking system. (Doc. 61, Ex. D, Smith Decl. at ¶ 9-23).  The employee's stack ranking is calculated using 1/3 of their CEI/OSAT scores, 1/3 Quality Scores and 1/3 of their AHT scores for the three months immediately preceding the shift bid announcement. Id. The CEI/OSAT score comes from customer surveys submitted by the customer after their call with a DRD agent. (Id. ¶21).

2

The Quality scores is evaluated by an independent Quality Assurance (QA) team within Fifth Third. The QA team evaluates each agent based on their review and scoring of 6 calls per month to determine whether the agent is giving professional, accurate, consistent, and efficient service to customers. Id.  The Average Handle Time (AHT) measures the DRD Agent's average time spent handling a customer call. Id.

From June 2014 through March 2016 there were 9 shift bid opportunities. (Doc. 61, Ex. D., Smith Decl at ¶ 25).  On February 18, 2015, Andria Bach sent an email notifying agents about a new shift bid and the eligibility requirements. (Doc. 61, Ex. D, Smith Decl. at ¶ 26- 35; Smith Decl. Ex. 2)  The deadline to apply for a new shift bid was February 24, 2015 and the new schedules were to go into effect on March 9, 2015. (Id. ¶27).  The bidding process used the stack rank scores for November and December 2014, and January 2015. (Id. ¶ 28).

 At the time of this shift bid, Plaintiff worked second shift Monday through Thursday from 11:30 a.m. to 8:00 p.m. and Saturdays from 8:30 a.m. to 5:00 p.m.  Plaintiff wanted a schedule with Saturdays off. (Id. ¶ 32).  Six employees were selected for a new schedule including Plaintiff. (Id ¶ 30).   The six employees selected were: Kristen Rice (white female), Joshua Hedley (white male), Mirela Kombie (white female), Nikki Devrou (white Female), Plaintiff Hearod and Jerome Knox (black male). Id. The Saturday off shifts were given to Rice, Hedley, Devrou and Kombie, the top four employees on the stack rank. (Id. ¶33).

Plaintiff did not win one of the no Saturday shifts because she ranked second two last according to the stack rank for this shift bid. (Doc. 61, Smith Decl., attached Ex. 2 at

p. 5).  However, Plaintiff won a new schedule to work first shift instead of second shift, but she declined it.

Another shift bid opportunity opened up on April 14, 2015.  Instead of creating three brand new shift openings and doing a formal shift bid, Fifth Third decided to conduct an informal shift bid in which it offered the top-ranking DRD agents the option to keep their current weekday schedules and just stop working on Saturdays. (Doc. 61, Ex. D, Smith Decl. at ¶ 37).   Fifth Third ran a stack rank report for this informal shift bid and went down the list of the top-ranking employees until three openings for no Saturdays were filled. (Id., attached Ex. 3, Smith Email dated 3/25/2016).  Zach Hassler (white male), Katherine Slee (white female) and Tasha Longmire (black female) were the top three employees selected for this informal shift bid.   Plaintiff was not selected for a no-Saturdays schedule because she was not among the top three employees in the stack ranking done for this informal shift bid.

On May 11, 2015 Plaintiff received a Coaching for Attendance. (Doc. 61, Ex. D, Smith Decl. at ¶ 59 - 70; Smith Decl., Ex. 4). A coaching occurs when a manager communicates performance or other deficiencies to an employee. (Doc. 61, Ex. C, Darpel Decl. at ¶ 45; Darpel Decl. Ex. 11, 13 and 14). Smith was her supervisor at the time and issued this Coaching. Id. Karen Darpel was not involved in this coaching session at all. (Doc. 61, Ex. C, Darpel Decl. at ¶ 46-50; Ex. D, Smith Decl. at ¶ 60-62)  Plaintiff was late to work 9 times between January 2015 and April 2015. (Doc. 61, Ex. D, Smith Decl. at ¶ 64-70; Smith Decl. Ex. 4 and 5). She also left early on 1/13/15 and 4/25/2015 and she had three unplanned absences on 4/16/15, 4/20/15 and 4/29/2015. Id.

4

Pursuant to Fifth Third's Attendance and Tardiness Policy, "[u]nscheduled absences place an unfair burden on co-workers and should be avoided. Frequent unscheduled absences, including late arrivals and early departures, are grounds for discipline, up to and including termination. Unexcused absences and excessive absences may result in disciplinary action up to and including termination." (Doc. 61, Ex. C, attached Ex. 13, January 2015 Attendance & Tardiness Policy in the April 1, 2015 Policy Manual).

In June 2015, Fifth Third notified the DRD employees of three shifts bid openings, one of which had a no Saturdays. (Doc. 61, Ex. C, Darpel Decl. at ¶ 18-30; Darpel Decl. Ex. 4; Ex. D, Smith Decl. at ¶ 41).  The new schedules would go into effect on July 13, 2015 and Fifth Third used the stack rank for March, April, and May 2015 to select the winners of this bid. Id. Fifth Third selected the top-ranking agents for this bid. (Doc. 61, Ex. C, Darpel Decl. at ¶ 23; Darpel Decl., Ex. 6; Ex. D, Smith Decl. at ¶ 46).  Plaintiff was not selected because she ranked last on the stack rank out of those who applied and almost last when compared to all DRD agents. (Doc. 61, Ex. C, Darpel Decl. at ¶ 30; Darpel Decl., Ex. 6 and 7).

In July 2015, Plaintiff sent an email to Karen Darpel ("Darpel"), Employee Relations Consultant, complaining that two white male agents, Patrick Markus, and Evan Demott, were selected but they were not eligible for the shift bid because they had not worked for Fifth Third for at least 6 months and they had lower seniority than her. (Doc. 61, Ex. C, Darpel Decl. at ¶ 31-37, Darpel Ex. 8 and Ex. 9).  Darpel investigated her complaints by consulting with Kazmierski. (Doc. 61, Ex. C, Darpel Decl. at ¶ 34-37, Darpel Decl. Ex. 10). Kazmierski explained that although these two agents had not been in their current

schedule for six months at the time the bid was posted, both employees would have reached their 6 months before the new shift began. (Id. ¶43). Kazmierski further explained that they have never prevented any employee from bidding on a shift under these circumstances. Id.  Plaintiff ranked last among all the employees who participated in the June 2015 shift bid. Id.

On July 14, 2015 Kynae Austin prepared a coaching for Plaintiff regarding a customer complaint on an OSAT, which is a customer survey the customer completes after their interaction with a DRD agent curing a call. (Doc. 61, Smith decl., at ¶ 71-72). The customer threatened to close her account based on the poor customer service that she received from Plaintiff. The customer complained that Plaintiff was "uncivilized and unprofessional and rude", and she asked for the matter to be escalated to Plaintiff's immediate supervisor.  Kynae Austin, a black female, was her supervisor at this time, and she prepared this coaching. Id.  Smith and Darpel were not involved in this coaching. (Doc. 61, Smith decl., at 71-72; Darpel Decl. at ¶ 92-93).  On July 29, 2015 Austin issued a coaching document to Plaintiff for failing to get preapproved to work overtime. (Doc. 61, Ex. G).

Also in July 2015, Plaintiff submitted an EEOC Charge of Discrimination for race and age discrimination and retaliation against Fifth Third. (Doc. 61, Ex. E)  In her 2015 EEOC Charge, Plaintiff alleged that she applied for multiple shift bids in March, April, and June 2015 and other younger white males with less seniority received the bids for day shift before the bidding was closed.  (Doc. 61, Ex. E).

6

Additionally, on June 10, 2015, Plaintiff submitted a written complaint to HR alleging a hostile work environment. (Doc. 61, Ex. C, Darpel Decl. at ¶51; Darpel Decl. Ex.15). Karen Darpel was assigned to investigate the matter. (Doc. 61, Ex. C, Darpel Decl. at ¶ 52, Darpel Ex. 21).   After completing her investigation, Darpel scheduled another meeting with Plaintiff for July 27, 2015. (Id. at ¶ 53-59).  However, on July 22, 2015, Darpel learned that Plaintiff had been in the hospital and might not be able to return to work. Id.  Darpel inquired as to whether Plaintiff had applied for FMLA leave through CIGNA, Fifth Third's third-party leave administrator, and Plaintiff said that she had applied but she wasn't eligible because she hadn't worked at Fifth Third for one year. Id. Darpel contacted CIGNA and asked them to include her time at Fifth Third when she was working as a temporary employee through Adecco so she would be eligible. (Darpel Decl. Ex. 17 at p. 3).   On August 14, 2015, CIGNA approved her FMLA leave for 7/20/15 to 7/26/15. (Ex.D, Darpel Decl. at ¶ 59; Darpel Decl., Ex. 16 at p. 2).

Plaintiff called off work without advanced notice on 8/5/15, 8/6/15 and 8/24/15. (Doc. 61,  Ex. C, Darpel Decl. at ¶ 60-65; Darpel Decl. Ex. 18) . Plaintiff reported that her car was stolen on 8/24/15. (Doc. 61, Ex. C, Darpel Decl. at ¶ 62; Ex. B, Hearod Depo. at p.181-188). Fifth Third ultimately gave her until September 14, 2015 to get these absences approved as FMLA leave. Id.

On September 8, 2015 Austin contacted CIGNA to inquire about any FMLA leave approved for August 2015 and CIGNA told her there were none. (Doc. 61, Ex. C, Darpel Decl. at ¶ 66; Darpel Decl. Ex.17).

Thereafter, on September 10, 2015, Austin prepared a written Performance Counseling concerning these unexcused absences on 8/5/15, 8/6/15 and 8/24/15. (Darpel Decl., Ex.17). On September 21, 2015, Fifth Third contacted CIGNA again to confirm if Plaintiff was approved for any additional FMLA leave after 7/26/15 and CIGNA confirmed she was not. (Doc. 61, Ex C, Darpel Decl. at ¶ 68-75; Darpel Decl. Ex. 17 at p. 2)

On September 21, 2015, Austin held a meeting with Plaintiff to issue this Performance Counseling and Smith was there only as a witness. (Doc. 61, Ex. C, Darpel Decl. at ¶ 68-75; Darpel Decl. Ex. 18; Ex. D, Smith Decl. at ¶82).  After the counseling, Hearod finally contacted CIGNA to obtain FMLA leave 8/5, 8/6 and 8/24/2015. (Doc. 61, Ex. C, Darpel Decl. ¶ 72-75; Darpel Decl. Ex. 17).  On September 30, 2015, Austin talked with CIGNA and confirmed that they were updating her FMLA leave to be approved only for 8/5/15 and 8/6/2015 and not for 8/24/2015, the day Plaintiff's car was stolen. (Doc. 61, Darpel Decl. Ex. 19).

 In October 2015, Plaintiff contacted Darpel's boss, Senior Employee Relations Manager Meaghan Ruehl ("Ruehl"), with concerns that Darpel and Plaintiff's managers had been unfairly harsh concerning her performance/attendance because of her earlier complaints about unfair treatment. (Doc. 61, Ex. H, Ruehl Declaration at ¶ 1-13). Ruehl met with Plaintiff on November 4, 2015.  During this meeting, Plaintiff reiterated her prior concerns about unfair shift assignments and expressed concerns about her 9/10/2015 Performance Counseling. Id.  Ruehl reviewed the situation and met with Plaintiff again on November 11, 2015 and informed Plaintiff that she would remove any days ultimately

approved as FMLA leave from her Performance Counseling, but the counseling would not be retracted because Plaintiff still failed to comply with Fifth Third's policy. Id. Ruehl was still investigating Plaintiff's other claims when Plaintiff resigned. Id.

In January 2016, Plaintiff filed an EEOC Charge alleging retaliation, race, and age discrimination. (Doc. 61, Ex. F). In her 2016 charge, she alleges that she filed a previous charge of discrimination in 2015 and since then she's been written up multiple times for time and attendance while on approved FMLA leave, on an approved vacation and when her car was stolen. Id. In her 2016 charge she claims that she filed her 2015 EEOC Charge on July 14, 2015. (Doc. 61, Ex. F).

On February 14, 2017, Plaintiff filed a Complaint with Exhibits A - Z in Ohio's state court alleging violations of Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991 and the Family Medical Leave Act. (Doc. 1-1). On March 16, 2017, Fifth Third filed a Notice of Removal to this court. (Doc. 1).

**II. Analysis**

**A. Summary Judgment Standard of Review**

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P.

56(c)) (internal quotation marks omitted).  "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations.  After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "The 'mere possibility' of a factual dispute is not enough."  *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)).  In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986).  The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor."  *Id.* at 255 (emphasis added).  The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided.  *Id.* at 251-52.

To demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita,* 475 U.S. at 587 (citation omitted).

10

It is the Plaintiff's burden to point out record evidence to support his claims. "[T]he Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin County Bd. Of Com'rs*, 637 F. Supp.2d 561, 576 (S.D. Ohio 2009) (citing *Williamson v. Aetna Life Ins. Co.,* 481 F.3d 369, 379 (6th Cir. 2007)).

### B. Defendant's Motion for Summary Judgment

As detailed above, Plaintiff's complaint alleges that Defendant discriminated and retaliated against her based on her age, race and gender in violation of Federal law. Fifth Third argues that it is entitled to judgment as a matter of law because (1) Plaintiff failed to file a Complaint within 90 days of the EEOC's issuance of a Notice of Right to Sue Letter concerning her 2015 EEOC charge; (2) she failed to exhaust her administrative remedies for some of the claims in her Complaint; and (3), she failed to put forth any admissible evidence to establish a *prima facie* case for the remaining claims in her Complaint. Fifth Third's contentions are well-taken.

### C. Fifth Third is entitled to Judgment as a Matter of law

*1. 2015 EEOC Charge*

A plaintiff seeking relief under Title VII of the ADA must file suit within ninety days of receipt of a right to sue letter from the EEOC. *See* 42 U.S.C. § 2000e-(5)(f)(1); *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.,* 209 F.3d 552, 557 (6th. Cir. 2000). Like any other statute of limitations, the 90-day deadline bars suit if the complaint is not timely filed. *Truitt v. County of Wayne,* 148 F.3d 644, 646-7 (6th Cir. 1998) (holding that the ninety-day filing requirement is a "timing requirement similar

11

to a statute of limitations."). This statutory limit has been strictly enforced by federal courts. *Graham-Humphreys,* 209 F.3d at 557. Further, the Supreme Court has held that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver,* 447 U.S. 807, 826 (1980).

In this Circuit, it is presumed that a Plaintiff received notice within five days of the date the EEOC mailed the NRTS Letter, and the 90-day period begins to run after the 5th day unless the Plaintiff can submit evidence to the contrary. *Graham-Humphreys,* 209 F.3d at 557 citing *Banks v. Rockwell Intern. N. Am. Aircraft Operations*, 855 F.2d 324, 325–27 (6th Cir.1988).

Here, Plaintiff alleges that non-African Americans were granted schedule changes more often than African Americans and they were allowed shift bids when they had not worked in the department for the requisite 6 months. These same claims were alleged in the Plaintiff's 2015 Charge of discrimination. (Doc. 61, Ex. E).  The EEOC completed its investigation and mailed a Dismissal and Notice of Right to Sue Letter "NTRS") on August 31, 2015. Id.  Pursuant to 42 U.S.C. § 2000e–5(f)(1), Plaintiff should have filed a lawsuit by December 5, 2015. However, Plaintiff did not file this action until February 2017.

Plaintiff states she cannot determine the date she received the Notice of Right to Sue Letter; however, she did not submit any evidence that she did not receive the Right to Sue letter within five days of the mailing date.  Nor does she argue that she did not receive the letter.  Notably, Plaintiff attached it as a supplement to her complaint filed in February 2017.  Plaintiff's pro-se status does not excuse her failure to comply with the

12

90-day filing requirement. E.g., *Anderson v. Hamilton Cnty. Bd. of Comm'rs*, No. 1:05cv344, 2006 WL 2709767, at *3 (S.D. Ohio 2006); cf. *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) (The plaintiff's pro se Complaint "was not dismissed as the result of inartful pleading or any lack of legal training, but rather because he failed to adhere to readily comprehended court deadlines of which he was well-aware.").

Accordingly, Plaintiff's claims asserted in her 2015 charge of discrimination fail as a matter of law because they are untimely. *See, Graham-Humphreys*, 209 F.3d at 557; *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 196 (1984) (per curiam).

2. *Plaintiff failed to properly oppose Fifth Third's summary judgment motion*

Next, Fifth Third argues that Plaintiff failed to properly oppose summary judgment by failing to cite to admissible evidence in the record as required by Rule 56 (c) of the Federal Rules of Civil Procedure, therefore, Fifth Third is entitled to judgment as a matter of law pursuant to Rule 56(e). As detailed above, Rule 56 (c) provides that the nonmovant must "cit[e] to particular parts of materials in the record" to demonstrate the existence of a genuine dispute of material fact, or otherwise "show[ ] that the materials cited" by the moving party do not demonstrate that no disputed issue of material fact exists. Fed.R.Civ.P. 56(c)(1).

Thus, to demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted). It is the Plaintiff's burden to point out record evidence to support her claims.  "[T]he Court

13

has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin County Bd. Of Com'rs*, 637 F. Supp.2d 561, 576 (S.D. Ohio 2009) (citing *Williamson v. Aetna Life Ins. Co.,* 481 F.3d 369, 379 (6th Cir. 2007)).

Fifth Third asserts that Plaintiff's Responses to its Proposed Statement of Undisputed Facts is not supported by any citations to any contradicting evidence in the record as required by paragraph (E)(3)(b) of the undersigned's Standing Orders and does not contain a list of each material fact that the Plaintiff contends must be tried. Fifth Third further argues that many of the exhibits attached to Plaintiff's memorandum in opposition do not meet the requirements of Rule 56 (c). In this regard, Fifth Third notes, *inter alia*, that Plaintiff purports to submit 5 witness statements in paragraph 50, but the questionnaires she submitted as Exhibits 1-5 are not witness statements, are inadmissible hearsay, and do not constitute evidence of discrimination. Moreover, they do not address the specific allegations in her complaint or her EEOC charges. She also makes various conclusory allegations of discrimination and statements of fact but fails to cite to any evidence in the record at all. Namely, on page 4 of her Memorandum she states, "the defendant settled their position when they agreed that they did indeed allow a different set of rules to apply to the white males." But she fails to cite to any evidence in the record where Fifth Third supposedly made such an admission.

As such, Fifth Third asserts that pursuant to Rule 56(e) if the Plaintiff fails to properly support an assertion of fact or fails to properly address Fifth Third's asserted facts, the Court may consider the fact undisputed for summary judgment purposes and

grant summary judgment if Fifth Third's motion and supporting materials, including the facts considered undisputed show that Fifth Third is entitled to summary judgment. The undersigned agrees and for the reasons that follow, recommends that Fifth Third's well supported motion for summary judgment should granted.

      3. *Plaintiff fails to establish a prima face case of discrimination and/or retaliation*

Title VII prohibits unlawful employment discrimination on the basis of race, or in retaliation for making "a charge ... in an investigation, proceeding, or hearing under this title." 42 U.S.C. §§ 2000e-3(a) and 2000e-16(a). Plaintiff alleges that she suffered discrimination and retaliation on the basis of her race. Because Plaintiff offers no direct evidence of race discrimination, the familiar *McDonnell Douglas* burden-shifting framework applies to Plaintiff's claims. See *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973).

Under the burden-shifting framework of *McDonnell Douglas,* the plaintiff must first establish a *prima facie* case under the relevant statute. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. "A plaintiff's burden in establishing a prima facie case is not intended to be an onerous one." *Majewski v. Automatic Data Processing, Inc.,* 274 F.3d 1106, 1114 (6th Cir. 2001). Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision. If the defendant makes the appropriate showing, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason was a pretext for discrimination. *Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–55. (1981).

"To establish a *prima facie* case of employment discrimination, a plaintiff must

demonstrate that: (1) she is a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment decision; and (4) she was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *White*, 533 F.3d at 391 citing *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008); *accord Clay v. United Parcel Serv*., Inc., 501 F.3d 695, 703 (6th Cir. 2007). *See also, Burnett v. Carington Health Systems*, U.S. Dist. No. 1:11–cv–324, 2012 WL 6001034 (S.D. Ohio, Nov. 30, 2012).

In order to establish a *prima facie* case of retaliation under Title VII, Plaintiff must show that (1) she engaged in activity protected by Title VII; (2) her exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Laster v. City of Kalamazoo*, 746 F. 3d 714, 728 (6th Cir. 2014) citing *Jones v. Johanns*, 264 Fed.Appx. 463, 466 (6th Cir. 2007).

Thus, common to both the employment discrimination and retaliation claims is a showing of an adverse employment action, which is defined as a "materially adverse change in the terms and conditions of [plaintiff's] employment." *Smith v. City of Salem, Ohio*, 378 F. 3d 566 (6th Cir. 2004) citing *Hollins v. Atlantic Co*., 188 F.3d 652, 662 (6th Cir.1999).

Defendant contends that Plaintiff's discrimination and retaliation claims fail as a matter of law because she cannot establish that she suffered an adverse employment action. Plaintiff appears to assert that her counseling and coachings were adverse

actions. However, as noted by Defendant, courts have repeatedly held that, "[a] written reprimand, without evidence that it led to a materially adverse consequence such as lowered pay, demotion, suspension, or the like, is not a materially adverse employment action." *Taylor v. Geithner*, 703 F. 3d 328, 338 (6th Cir. 2013) citing *Creggett v. Jefferson Cnty. Bd. of Educ.*, 491 Fed.Appx. 561, 566, No. 11-6375, 2012 WL 3104508, at *3 (6th Cir. Aug. 1, 2012)). Here, Plaintiff has not put forth any evidence that the counseling and coachings were unwarranted, nor has she put forth any evidence that any of these write ups resulted in lower pay, a demotion, suspension.

Plaintiff further asserts that she suffered an adverse action because she was constructively discharged. Constructive discharge occurs when an employer, with discriminatory purpose, makes working conditions "'so difficult or unpleasant that a reasonable person in the employee's shoes would feel compelled to resign.'" *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 882 (6th Cir. 1996) (quoting *Easter v. Jeep Corp.*, 750 F.2d 520, 522-23 (6th Cir. 1984)). "To demonstrate constructive discharge, a plaintiff must adduce evidence to show that (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, (2) the employer did so with the intention of forcing the employee to quit, and (3) the employee actually quit." *Savage v. Gee*, 665 F.3d 732, 739 (6th Cir. 2012) (internal quotation marks and alterations omitted) (quoting *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999)). "To determine if there is a constructive discharge, both the employer's intent and the employee's objective feelings must be examined." *Id.* (quoting *Moore*, 171 F.3d at 1080).

17

The type of proof required to show constructive discharge is high. *See Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 630 (6th Cir. 2018); *see also Cleveland v. S. Disposal Waste Connections*, 491 Fed. Appx. 698, 708 (6th Cir. 2012) (disparaging comments isolated to only a few incidents and by a few individuals do not alter working conditions). To determine whether an employee's working conditions were objectively intolerable, courts consider whether the employee was demoted, had a reduction in salary or job duties, was reassigned to menial or degrading work, or otherwise badgered, harassed, or humiliated. *Russell*, 739 Fed. Appx. at 794-795.

Here, Plaintiff has failed to put forth any evidence that she was constructively discharged. As noted by Defendant, she was written up for valid attendance and/or performance issues and policy violations and she failed to produce evidence that these write ups were false. (Doc. 61, Ex. I, Plaintiff Depo., at 131-133; 176-186; 193-197). She also did not receive any preferential shift bids because she ranked last or almost last in all of the stack ranks. Lastly, the interaction she described between her and Smith in her hostile work environment complaint was not hostile and doesn't rise to the level of being severe and pervasive as required by law.

*4. Fifth Thirds legitimate non-discriminatory reason for its actions and Plaintiff's arguments regarding pretext*

Even if the Plaintiff could establish a *prima facie* case of discrimination or retaliation, Fifth Third has proven a legitimate, nondiscriminatory business purpose for its actions. The uncontested evidence shows that Plaintiff was written up for valid attendance and/or performance issues and policy violations. (Doc. 61, Ex. I, Plaintiff Depo., at 131-133; 176-186; 193-197). Additionally, the evidence of record establishes

that Plaintiff did not receive any preferential shift bids because she ranked last or almost last in all of the stack ranks. (See Doc. 61, Ex. D, Smith Decl.). The burden now shifts to Plaintiff to prove that Defendants legitimate non-discriminatory reasons for its actions were pretextual. Plaintiff, however, fails to provide any evidence to establish that the stated reasons for Fifth Thirds employment decisions had no basis in fact; did not actually motivate Fifth Third's actions; or were insufficient to warrant such actions. See *Manzer*, 29 F.3d at 1084.

In light of the foregoing, Plaintiff has failed to rebut Defendant's legitimate non-discriminatory reasons for its actions and has failed to produce any evidence that Fifth Third intended to discriminate or retaliate against Plaintiff on the basis of race. *See Thurman*, 90 F.3d at 1166 (citing *Hicks*, 509 U.S. at 502) ("The ultimate burden of persuasion remains with the plaintiff to prove that the employer's reasons were a pretext for discrimination and that the employer intended to discriminate on the basis of race.") Although the summary judgment standard requires that evidence of record be viewed in the light most favorable to the nonmoving party, it does not require that all bald assertions, opinions, or even genuinely held beliefs asserted by the nonmoving party be adopted wholeheartedly by a court. *Diaz v. Mitchell's Salon and Day Spa, Inc*., Case No. 1:09-cv-882, 2011 WL 379097, * 7 (S.D. Ohio 2011) (J. Weber). Plaintiff's unsupported conclusions are insufficient to meet her burden of establishing that Fifth Third's proffered reasons for its employment decisions were a pretext for racial discrimination.

### 4. Hostile Work Environment

In order to establish a claim for a hostile work environment, Plaintiff must present evidence of harassment that "unreasonably interferes with her work performance and creates an objectively intimidating, hostile, or offensive work environment." *Younis v. Pinnacle Airlines, Inc*., 610 F. 3d 359,362 (6th Cir. 2010*) citing Grace v. USCAR,* 521 F.3d 655, 678 (6th Cir. 2008). Plaintiff must show that the behavior is so severe and pervasive "as to constitute a hostile or abusive working environment both to the reasonable person and the actual victim." *Grace* at 678, citing *Randolph v. Ohio Dep't of Youth Svcs.,* 453 F.3d 724, 733 (6th Cir.2006).

In response to Fifth Third's motion for summary judgment, it appears that Plaintiff is arguing that her entire employment experience with Fifth Third constitutes a hostile working environment. But again, she failed to put forth any evidence supporting these claims. As detailed above, Fifth Third's Motion for Summary Judgment cites to specific evidence in the record to support every coaching and counseling she received, and the Plaintiff has not put forth any evidence to the contrary. For these reasons, Defendant is entitled to judgment as a matter of law with respect to Plaintiff's hostile work environment claims.

### 5. FMLA

Plaintiff purportedly claims that she was denied leave under the FMLA and that she was disciplined for taking FMLA leave. The Sixth Circuit recognizes two distinct theories for recovery under the FMLA: (1) the "entitlement" or "interference" theory arising from 29 U.S.C. § 2615(a)(1); and (2) the "retaliation" or "discrimination" theory arising

from 29 U.S.C. § 2615(a)(2). *Hoge v. Honda of America Mfg., Inc*., 384 F. 3d 238, 244 (6th Cir. 2004) *citing Taylor v. Union Inst*., 30 Fed.Appx. 443, 2002 WL 252443, at *7 (6th Cir. Feb.19, 2002) (unpublished opinion) (quoting *Hodgens v. Gen. Dynamics Corp*., 144 F.3d 151, 159 (1st Cir.1998)).

As noted by Defendant, Plaintiff claims that Fifth Third's HR department falsified claims of non-receipt of documents and issued a false coaching document.  (Complaint ¶17). Thus, it appears she's asserting an interference claim. To prevail on this claim, Plaintiff must show that she was denied an entitlement under the FMLA.

Here, Fifth Third's HR department does not handle FMLA leave.  Fifth Third uses CIGNA, for this purpose. According to CIGNA, Plaintiff never sought approval for her August 2015 absences until she received counseling on September 21, 2015.  (Doc.61, Ex. Darpal Decl. at 68-72).  Fifth Third also notes that it continued her first deposition to give her time to find and produce any additional FMLA documents concerning these August 2015 absences and she still failed to produce any. (Doc. 61, Ex. I, Plaintiff Depo. Vol II at p. 532-538 and Depo., Ex. 71.).

In response to summary judgment, Plaintiff submits Ex. 26, which are various fax confirmations and random letters to CIGNA, but none of those documents shows her request to CIGNA to approve FMLA leave for her absences on 8/5 and 8/6 of 2015. In any event, ultimately her FMLA leave for 8/5 and 8/6 was approved.  As such, Plaintiff cannot show that she was denied an entitlement under the Act or that she was disciplined for taking approved FMLA leave.  As detailed above, she was disciplined for being absent from work and failing to notify CIGNA for approval of FMLA leave per Fifth Third's policy.

Accordingly, Plaintiff's FMLA claim fails a matter of law.

**III. Conclusion**

For these reasons, **IT IS THEREFORE RECOMMENDED THAT** Defendant's motion for summary judgment (Doc. 61) be **GRANTED** and this case be **TERMINATED** on the active docket of the Court.

_s/ Stephanie K. Bowman_
Stephanie K. Bowman
United States Magistrate Judge

22

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KATHLEEN HEAROD,

     Plaintiff,

Case No. 1:17-cv-175

J. Black
M.J Bowman

vs.

FIFTH THIRD BANK,

     Defendant.


**NOTICE**


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).